McDonald et al. v. Chapman et al.

[91 South. 861.   No. 22626.]

1. WILLS. *Will held sufficient to convey land though surveyor found less within the bounds than stated in will.*

A will conveying to testator's son a part of his land on condition "Should my son, Sherman McDonald, marry during my lifetime, then he is to have three acres on the east side of the plantation . . . and thirty-seven acres north of the Little creek; the northern boundary line not to extend farther northwest than big Hurricane creek," is sufficient to convey the land where a surveyor makes a survey and finds thirty-five and eighty-five hundredths acres lying north of Little creek and east of Big Hurricane creek within the calls of testator's land, the evidence showing that Little creek enters testator's land at the east boundary and flows into Big Hurricane creek in said place, and that Big Hurricane creek runs through the said land so as to make approximately thirty-seven acres in the space north of Little creek and east of Big Hurricane creek in the lands of testator.

2. WILLS. *Will construed as giving each grandchild an equal share with each child, so that parol evidence was not competent to show the contrary.*

A will providing, "It is my will after my wife's death . . . that there be no division of my land until my grandson, Lucius Chapman, becomes of age, . . . then my heirs may divide the estate as they think best, that each grandchild get an equal share with my own children," conveys to the grandchildren an equal interest with the children and parol evidence is not competent to show a contrary intention.

APPEAL from chancery court of De Soto county.

HON. J. G. McGOWAN, Chancellor.

Suit by Mark Chapman and others against Ida McDonald and others for partition. From a judgment in favor of plaintiffs, defendants appeal. Reversed and remanded.

*F. C. Holmes,* for appellant.

Appellant cannot complain as to the holding of the court with regard to the three acre house site, by which their rights were limited to the one and a half acre in their actual occupancy, because the description of said three acres as contained in said will, was not certain and could not be made certain. But they do claim that under the second provision of said will that the description of said thirty-seven acres when applied to the lands of said testator, was not uncertain and void. The second provision of said will is as follows: "Should my son, Sherman Mc-Donald, marry during my life time, then he is to have . . . and thirty-seven (37) acres north of the little creek. The northern boundary line not to extend farther northwest than big Hurricane Creek." Vol. 1, page 836, Enc. of Evidence, *Schottman* v. *Hoffman,* 73 Miss. 188; *Christman* v. *McGee,* 108 Miss. 550 et seq.

We therefore respectfully contend that the meaning of the written words used by the testator was that Sherman McDonald upon the death of said testator should become the absolute owner in fee of that portion of the east half of section 8, township 3, range 8 west, in DeSoto county, Mississippi, described as follows, to-wit: Bounded on the south by little creek, on the east by the eastern boundary

line of the west half of said section, and on the north and
west by Hurricane Creek, containing thirty-seven acres,
more or less. This position is sustained by the reasoning
of the learned judge in the opinion on suggestion of error
in the case of *Christman* v. *McGee*, 108 Miss. 568. Follow-
ing this reasoning and applying it to the case before us
we insist that the language used by the testator in his will
is sufficiently descriptive to identify the land intended to
pass by the will. And in the light of all the circumstances
surrounding the testator at the time he made his will that
it was his intention that this tract of land should go to his
son Sherman McDonald through whom appellants claim.
We therefore respectfully insist that the learned Chan-
cellor erred in disallowing the claim of appellants as to
said thirty-seven acres.

Upon the second assignment of errors we respectfully in-
sist that the chancellor erred in arbitrarily decreeing that
the grandchildren of the testator living at the time of his
death were devisees under his will. An examination of
said will shows that the testator intended to devise his
lands to those persons who after his death would be his
heirs at law. The whole will shows this. The first pro-
vision contains a direction as to the division of rents dur-
ing the supposed period of time that would elapse from
the date of the death of the life tenant to the period of
distribution, this language being used; "First. After my
death, my farm land is to be rented and the proceeds
equally divided between my heirs." The second provision
of the will contains this language, "regardless, the forty
acres given my son Sherman McDonald, he is to have an
equal share with the other heirs in the division of the re-
mainder of my estate after the death of my wife Easter
McDonald." The third clause of said will in fixing the
time for division uses this language: "And after Lucius
Chapman becomes of age then my heirs may divide the es-
tate as they think best." Therefore we say, looking to the
whole will, it shows plain intent and purpose to divide
the lands among the testator's heirs. The latter portion

of said third provision in which the testator uses this language: "That each grandchild get an equal share with my own children" evidently is intended to, and does refer to such grandchild or grandchildren as may be an heir or heirs at law at the time of division. The testator was providing against the lapse of the devise to any of his children in the event of the death of such child before the testators death or before the time fixed for division. He was providing for a contingency that might happen for which provision was made by law under section 3369, Hemingway's Code which provides that "Bequests not to lapse in certain cases. A construction of the whole will shows that it could not have been the intention of the testator to make devisees of those grandchildren whose parents were living, because thereby he would defeat the equal distribution provided for in his will. To illustrate:—Under the construction adopted by the learned chancellor the children of Rachel Oliver, a daughter of the testator who predeceased him, would each in their own right as grandchildren receive between them one share. And so with appellant Lee Allen McDonald, who would receive as grandson one share and also as an heir of Sherman McDonald a portion of another share. We respectfully contend that this construction of the learned chancellor conduced to the error of holding that only the grandchildren living at the time of the testator's death should be counted as devisees. If grandchildren as a class were made devisees under the provision of said will, then why, we ask, should not all grandchildren living at the time of division, be allowed to participate in the division by coming into the class at the time of division? The language of the will forcibly suggests that he might have other grandchildren, than those living on the date of the will, because he refers to Lucius Chapman as being the "youngest grandchild now living." In other words he arbitrarily fixed the age of majority, of his youngest grandchild then living as the time when his heirs should have division of his estate. The converse of the rule so well and clearly announced in *Harvey* v. *John-*

*son,* 111 Miss. 566, is equally true, namely, that where the terms of the will are expressed in doubtful and ambiguous meaning, there is room and necessity to resort to other parts or items of it for construction.

In conclusion we respectfully contend that in this case the cardinal rule of construction is to ascertain the intention of the testator. We therefore respectfully insist that the case should be reversed upon both of the errors assigned.

*R. E. L. Morgan,* for appellee.

As to who are the legatees under the will of Allen McDonald, the will is before the court and the appellees in their bill pray for this to be judicially determined.

The claim of title by adverse possession is not to be seriously considered because there is lack of evidence to sustain such a claim and secondly because appellants are claiming under the will of Allen McDonald. Easter McDonald, the life tenant died in 1920 and had possession of all of said estate under said will until her death.

The claim of title as set up by appellants is under this clause of the will of Allen McDonald:—"And thirty-seven (37) acres north of the little creek. The northern boundary line not to extend any farther northwest than big Hurricane Creek."

It is only where a latent ambiguity arises upon a will when it names a person the object of a gift or a thing as the subject of it. And there are two persons or things that answer such name and description; or it may arise when the will contains a misdescription of the object or thing.

Where a latent ambiguity contains a misdescription, if it can be struck out and enough remains in the will to identify the person or thing, the court will so deal with it, or if it is an obvious mistake, will read it as if corrected. *Patch* v. *White,* 117 U. S. 210.

The above case goes further on the question of admitting extrinsic evidence for the purpose of applying the

terms of a will to its proper subject-matter than any of our decisions have gone, yet it is not sufficient to justify the admission of the testimony in this case at bar.

In the case of *Schlottman* v. *Hoffman,* 73 Miss. 188, there was an obvious mistake in writing the amount of a legacy which the court very properly permitted extrinsic evidence to explain but did not allow any word added to the will as written.

In the case of *Christman* v. *McGee,* 108 Miss. 550, there was a misdescription of a quarter section of land, but leaving out the misdescription, or subtracting the words of misdescription from the will, there still remained enough for the court to determine the land intended to be devised and to carry out the will of the testator. The same as in *Patch* v. *White,* 117 U. S. 210, but in neither case did the court permit any words to be added to the will.

In the case at bar there is not any description of the land intended to be conveyed. The court may consider the language in the light of all the evidence introduced and all the surrounding circumstances and still you cannot determine from the language of the will the land intended to be conveyed.

It would be necessary to do as learned counsel has done, procure a surveyor and write a description of thirty-seven acres of land and prove by extrinsic evidence that the testator intended to convey thirty-seven acres of land as described by counsel and testified to by witnesses. This cannot be added to the description or substituted for lack of description of the will. "Words cannot be added to a will." *Ehrman* v. *Hoskins,* 67 Miss. 192.

We submit to the court that the language of the will does not give a starting point. What point north of the little creek should we start to determine the thirty-seven acres, or at what point on Big Hurricane should we begin? There is no beginning.

The ruling of the chancellor and the decree in this cause is correct.

Ethridge, J., delivered the opinion of the court.

Allen McDonald in his lifetime owned the east half of the west half of section 8, township 3, range 8, De Soto county, Miss., and left a will disposing of said property, which said will is in the following words and figures, to wit:

"To Whom It May Concern, to-wit:

"This is to certify that I, Allen McDonald, being in my right mind do make this will for the purposes herein set forth, to wit:

"1st. After my death my farm lands is to be rented and the proceeds equally divided between my heirs, after the death of my wife, Easter McDonald, who is to own and possess all my property during her natural life.

"2d Proviso. Should my son, Sherman McDonald, marry during my lifetime, then he is to have three (3) acres on the east side of the plantation for a dwelling site the south line of said three (3) acres not to extend farther south than forty (40) feet into the present orchard, and thirty-seven (37) acres north of the little creek. The northern boundary line not to extend farther northwest than big Hurricane creek. The forty (40) acres herein mentioned to be owned by my son, Sherman McDonald, after my death as his own individual homestead, regardless the 40 acres given my son, Sherman McDonald, he is to have an equal share with the other heirs in the division of the remainder of my estate after the death of my wife, Easter McDonald.

"3d. It is my will after my wife's death, Easter McDonald, that there be no division of my estate (land) until my grandson, Lucious Chapman, becomes of age, he being the youngest grandchild now living, and after Lucious Chapman becomes of age then my heirs may divide the estate as they think best that each grandchild get an equal share with my own children, viz.: Willie McDonald, Mary Chapman, Rachel Oliver, Silvia McDonald, Sherman

McDonald, Martha McGee, and Fannie Butler, and their heirs.

"This will made and signed in the presence of witnesses whose names are attached on this 20th day of February, A. D. 1892."

—which said will was duly witnessed.

The said Sherman McDonald mentioned in said will married during the lifetime of Allen McDonald, and settled upon the said tract of land and lived upon it during Allen McDonald's lifetime, and thereafter until his own death, and his widow and children who are defendants to the suit still reside thereon. The complainants filed their bill for partition or for sale and partition of said lands and parties to the suit are the children and grandchildren of Allen McDonald, the testator. The defendants, Ida McDonald, and the children of Sherman McDonald, the appellants here, set up the claim under the will alleging that said Sherman McDonald was placed in possession of the said property by Allen McDonald, and that the tract of land intended to be devised to Sherman McDonald was that part of the above-mentioned subdivision which lay north of Small creek and east of Hurricane creek, except three acres which were situated in the southern part of the said one hundred and sixty acres of land, the boundaries of which house site were evidenced by an old fence row placed by Sherman McDonald during his lifetime, and which had existed since about 1894. It was contended by the complainants that the description in the will was insufficient to identify the thirty-seven acres, and the chancellor held in accordance with this contention. The proof showed as to the house site that it had been occupied as a home by Sherman McDonald and his family, and the chancellor found title to one and a half acres inclosed within the boundary of the fence to belong to the family of Sherman McDonald. The proof further showed that Allen McDonald, deceased, had expressed his intention to give forty acres to his son, and further showed that the son had cultivated part of the land in controversy throughout the

period he lived on the place. The defendants procured a surveyor to make a survey of the land lying north of Small creek and east of Hurricane creek, and his map is in the record, and shows that the tract of land lying north of Small creek and east of Hurricane creek in the said subdivision amounted to thirty-five and eighty-five hundredths acres. The appellants contended that the chancellor erred in not decreeing title to the thirty-seven acres or to that part of the land lying north of Small creek and east of Hurricane creek to the appellant, and, second, that the chancellor also erred in decreeing that the grandchildren of the testator living at the time of his death were tenants in common with his children.

We are of the opinion that the title to the thirty-five and eighty-five hundredths acres lying north of Small creek and east of Hurricane creek passed to Sherman McDonald at the death of his father, and that the title thereto is now in the appellants. The streams mentioned are sufficiently referred to to make them boundaries for this conveyance, and the eastern boundary of the tract necessarily was a third boundary. In equity that is certain which is capable of being made certain, and a surveyor could easily lay off thirty-seven acres with these several things to constitute the boundaries of the tract. In fact the entire land owned by the testator within these boundaries constituted a fraction less than the thirty-seven acres called for. But, if there had been more land than thirty-seven acres embraced in the territory north of Small creek and east of Hurricane creek the surveyor could have with these boundaries laid off these thirty-seven acres immediately north of said Small creek. The chancellor therefore was in error in denying the appellants' title under the will to this land and to that extent the decree will be reversed.

On the second point raised by the appellants a careful consideration of the language employed convinces us that the testator intended for his grandchildren to share with his children. The language used plainly carries this purpose. There was evidence introduced tending to show a

contrary intention, and to show that the testator only intended that such as survived their parents should take the part of their deceased parent where such death has occurred prior to the death of the testator, but such evidence plainly contradicts the terms of the will, and the evidence was inadmissible for that purpose.

The decree will be reversed, and the cause remanded to be proceeded with in accordance with this opinion, the chancellor having retained jurisdiction until a commission could make sale of the land for division and a report thereof.

*Reversed and remanded.*